FILED

2021 Jul-29  PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| KAREN LYNN WAYMIRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:20-cv-00502-SGC |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | | |

## **MEMORANDUM OPINION**[1]

The plaintiff, Karen Lynn Waymire, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") terminating supplemental social security benefits ("SSI"). Waymire timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Waymire has a high school education and has no past relevant work history. (Tr. at 407).[2] She filed an application for SSI on August 12, 2010. (Tr. at 503). On

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10).

[2] Citations to the transcript ("Tr.") use page numbers assigned by the Commissioner to the record. Citations to other, non-transcript documents refer to the document and page number assigned by the court's electronic document system, CM/ECF.

January 25, 2012, an ALJ determined Waymire's medically determinable impairments of major depressive disorder, recurrent with bipolar disease; anxiety disorder; panic disorder; post traumatic stress disorder; pain disorder; personality disorder, not otherwise specified; metabolic syndrome; morbid obesity; failed bypass surgery; non-insulin dependent diabetes mellitus; hypertension; chronic low back pain; gynecological problems; and questionable breast lesion with pain met listing 12.04.[3]  (Tr. at 501). Therefore, the Commissioner found Waymire disabled and awarded her SSI benefits (Tr. at 495-503).

Following a mandatory periodic review, the Commissioner determined Waymire's disability had ceased as of May 10, 2017, and terminated her benefits as of July 2017.  (*Id.* at 504-523).  Waymire requested a hearing, where she appeared on May 1, 2019.  (*Id.* at 419, 542-546).   After the hearing, the Administrative Law Judge ("ALJ") denied Waymire's claim on July 30, 2019.  (*Id.* at 399-408).  At the date on which Waymire's disability ceased, she was 52 years-old.  (Tr. at 407, 504). Waymire sought review by the Appeals Council, but her request was declined on April 2, 2020.  (*Id.* at 646-648).   After the Appeals Council denied review of the ALJ's decision, that decision became the final decision of the Commissioner.  *See Frye v. Massanari,* 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v.*

---

[3] Listing 12.04 relates to depressive disorders, bipolar disorder, and related disorders.

*Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).  Thereafter, Waymire commenced this action.   (Doc. 1).

## II. STATUTORY AND REGULATORY FRAMEWORK

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).   Furthermore, a claimant must show she was disabled between her alleged initial onset date and her date last insured.  *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).  Once disability has previously been established, the regulations provide a seven-step process for determining whether a claimant continues to be disabled. 20 C.F.R. § 416.994(b)(5)(i-vii); *see Allen v. Astrue*, No. 3:11-CV-04322-KOB, 2013 WL 5519646, at *2 (N.D. Ala. Sept. 30, 2013) (citing 20 C.F.R. § 416.994(b)(5)).

First, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 416.920(d), 416.925 and 416.926.   If the claimant does, the claimant's prior

determination remains in effect.  If not, the evaluation proceeds to step two.  At the first step, the ALJ determined as of May 10, 2017, Waymire did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listings. (Tr. at 401).

Next, the Commissioner must determine whether the claimant has experienced medical improvement.   20 C.F.R. § 416.994(b)(5)(ii).   Medical improvement is defined as:

> [A]ny decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [she] w[as] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairments.

20 C.F.R. § 404.1594(b).  At this step, the ALJ determined Waymire's mental impairments had improved because her mental status exam was mostly normal by July 2017 and an additional psychiatric exam from February 2018 reported her memory was normal; she was oriented to time, place, and situation; and she had appropriate mood and affect, normal insight, and normal judgment. (Tr. at 402-403). Further, the ALJ determined Waymire had physical improvement by May 2017, including normal findings in cardiac testing in September 2017 and showings of no edema in her extremities during examinations in both August 2017 and January 2019. *Id.* The evidence during this period also included objective findings Waymire had no deep vein thrombosis in August and September of 2016. *Id.*

4

When a claimant has experienced medical improvement, the Commissioner's evaluation proceeds to step three, which requires determination of whether the claimant's medical improvement is related to her ability to work.  20 C.F.R. § 416.994(b)(5)(iii).  Here, the ALJ determined Waymire's medical improvement was related to her ability to work because by May 1, 2017, her comparison point decision ("CPD") impairments no longer met or medically equaled the same listing that was met at the time of the CPD.[4]  (Tr. at 403).  The ALJ identified the January 25, 2012 decision as the CPD, which is the most recent favorable medical decision finding Waymire disabled. (*Id.* at 400).

If the claimant's medical improvement is related to her ability to work, the evaluation then proceeds to step five, which analyzes whether the claimant has a medically severe impairment or combination of impairments.   20 C.F.R. § 416.994(b)(5)(v).  At the fifth step, the ALJ found that while Waymire's diagnosed impairments of non-insulin dependent diabetes, hirsutism, and mild degenerative disease of the cervical spine were not severe as of May 1, 2017, her impairments of obesity, depression, personality disorder, varicosities, and venous reflux continued to be severe. (Tr. at 403).   When impairments are found to be severe, the Commissioner's evaluation proceeds to the sixth step.

---

[4] In her brief, Waymire refers to the most recent favorable comparison as the "point of comparison" ("POC")."  For purposes of this memorandum opinion, the most recent favorable comparison will be referred to as the comparison point decision ("CPD").  (Doc. 11 at 8).

Before proceeding to the sixth step, the ALJ determined Waymire's residual functional capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R § 1543(a)(1). The ALJ determined that as of May 1, 2017, Waymire had the RFC to:

> Perform medium work as defined in § 20 C.F.R. 416.967(c), except no climbing of ladders, ropes or scaffold and no kneeling and crawling. She should avoid concentrated exposure to extreme heat and extreme humidity, and avoid all excessive vibration, unprotected heights, and hazardous machinery. She is limited to unskilled work with no more than occasional workplace changes, and the ability to make simple, work-related decisions. She has the ability to attend and concentrate for 2-hour periods. She can perform work that is goal-oriented, and is precluded from production paced or assembly line paced work; contact with the general public is not essential part of the job duties. She can perform work that is independent and does not require team work or coordination with others.

(Tr. at 403-404).

After determining a claimant's RFC, the ALJ proceeds to the sixth step and analyzes whether the claimant is able to perform any past relevant work. 20 C.F.R. § 416.994(b)(5)(vi). The ALJ determined Waymire had no past relevant work. (Tr. at 407); *see* 20 C.F.R. § 416.965. If it is determined a claimant is unable to perform past relevant work, the Commissioner's analysis proceeds to the seventh step, which considers whether the claimant is unable to perform any other work within the national economy. 20 C.F.R. § 416.994(b)(5)(vii). Considering Waymire's age, education, work experience, and RFC based on her then current impairments, the ALJ determined Waymire was able to perform a significant number of jobs in the

national economy, such as those of linen room attendant, dryer attendant, and stubber. (Tr. at 407-408).  Therefore, the ALJ concluded Waymire was no longer disabled as of May 10, 2017.  (*Id.* at 408).

## III. STANDARD OF REVIEW

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).   A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*  A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. DISCUSSION

Waymire asserts two errors on appeal: (1) the evidence was not sufficient to support the Commissioner's decision Waymire was no longer disabled; and, (2) the Appeals Council erred by denying review of the ALJ's decision based on additional evidence incorporated into the administrative record. (Doc. 11 at 2).

### A. Sufficient Evidence

Waymire first argues substantial evidence did not support the Commissioner's determination she was no longer disabled. As previously noted, review of the Commissioner's decision is limited to a review of whether the decision is supported by substantial evidence and proper legal standards were applied. *Crawford*, 363 F.3d at 1158. "Substantial evidence consists of 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Hicks v. Comm'r of Soc. Sec.*, 479 F. App'x 294, 295 (11th Cir. 2012) (*citing Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)).

To determine whether medical improvement has occurred, an ALJ must compare the prior and current medical evidence to see whether it shows changes in the symptoms, signs, or laboratory results associated with a claimant's impairments. *See Klaes v. Comm'r of Soc. Sec.*, 499 F. App'x 895 at 896-897 (11th Cir. 2012) (citing 20 C.F.R. § 404.1594).   To terminate benefits, the Commissioner may not focus only on current evidence of disability but must also "evaluate the medical evidence upon which [the claimant] was originally found to be disabled*." Solomon v. Comm'r, Soc. Sec. Admin.,* 532 F. App'x 837, 839 (11th Cir. 2013) (quoting *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984)).

Waymire contends the ALJ's decision she was no longer disabled was solely based on three records from St. Vincent's Family Medicine, two records from Choices of Alabama, a note from OB/GYN South, and the consultative evaluations performed by Ashley B. Hampton, Ph.D., and Dr. Celtin Roberston at MDSI Physician Group.  (Doc. 11 at 4 (citing Tr. at 529, 533)).   However, the ALJ's decision includes a comparison of Waymire's treatment records subsequent to the CPD.  (Tr. at 400-401, 403, 529).   This comparison inherently includes analysis and review of Waymire's medically determinable impairments at the time of the 2012 disability decision.   *Id.*   The ALJ specifically noted medical opinions and prior administrative medical findings were fully considered in Waymire's case.  (Tr. at 406, 529).

In her brief, Waymire argues against the weight or persuasiveness of three medical opinions. (Doc. 11 at 11-16). Specifically, she argues the opinion of Melinda Mearns, LPC, is inconsistent with Choices of Alabama records, the opinion of Dr. Ashley Hampton should not be considered persuasive, and the opinion of Dr. Guendalina Ravello is entitled to little weight. (Doc. 11 at 12-14). Waymire's arguments as to these medical opinions are without merit. Current regulations provide specific factors are to be considered when evaluating the persuasiveness of medical opinions and prior administrative medical findings. 20 C.F.R § 416.920c(a). These factors include supportability and consistency, and ALJs are required to articulate how medical opinions were considered. *Id.* Here, substantial evidence supports the ALJ's reason for determining Waymire's disability ended on May 10, 2017, and the ALJ properly articulated her consideration of medical opinions and/or findings included in the record. *See* 20 C.F.R § 416.920c(a). Moreover, it is not the role of this court to reweigh the evidence. *See Dyer*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Waymire received outpatient services at Choices of Alabama between April 2014 and January 2018 for major depressive disorder, recurrent, moderate. (Tr. at 870-886, 985-1019). In January 2017, Waymire was admitted to Choices of Alabama and seen by Melinda Mearns, LPC. (Tr. at 1086). Mearns diagnosed Waymire with major depressive disorder, recurrent, moderate, and a borderline

personality disorder.  (*Id*. at 406, 1086-1099).  Waymire's examination revealed depressed thought content and body posture and an attitude that conveyed an underlying depressed mood. (*Id*. at 1096).  Waymire exhibited normal speech and language skills and appropriate affect and no signs of delusions, bizarre behaviors, or other indicators of psychotic process. Waymire's associations were intact, her thinking was logical, and her thought content appeared appropriate. *Id*.  Her cognitive functioning was at normal range, her judgment was fair, and she denied suicidal ideas or intentions.  *Id*.  The ALJ found Mearns's opinion persuasive as to Waymire's diagnoses of depression and personality disorder but noted Waymire's examination reflected only mild to moderate symptoms.  (Tr. at 406).  Waymire argues the Choices of Alabama records as a whole "do not read as such" and discusses her further treatment at Choices of Alabama in support of her position. (*See* Doc. 11 at 12-15).  However, the ALJ considered these records as a whole and specified the persuasiveness of the opinions related to Waymire's medical diagnosis. Therefore, in light of the body of evidence, substantial evidence supports the ALJ's decision.

In April 2017, Guendalina Ravello, Ph.D., reviewed Waymire's medical records and found she had at most "mild limitations in her ability to understand, remember and apply information, in he [*sic*] concentration, persistence and pace, in her ability to adapt and manage herself, and moderate limitations in her ability to

11

interact with others secondary to her mental condition." (Tr. at 406, 504-516).  The ALJ found Dr Ravello's opinion only partially persuasive, as it was consistent in part with the evidence in the record. (Tr. at 406).  Waymire specifically argues the opinion of Dr. Ravello cannot be the basis for taking away her disability benefits because Dr. Ravello was a non-examining, non-treating doctor and cites to case law to argue the opinions of non-treating or non-examining physicians should be given little weight.  (Doc. 11 at 12-13).  As noted, the ALJ specified that Dr. Ravello's opinion was only considered persuasive to the degree it was consistent with evidence in the record and in no way was Dr. Ravello's opinion the sole basis for discontinuing disability.  (Tr. at 406).  Accordingly, Waymire's argument is without merit.  *See* 20 § C.F.R. 416.920c(a).

On April 4, 2017, consultative examiner Ashely P. Hampton, Ph.D., diagnosed Waymire with borderline personality disorder.  (Tr. at 976).  Following her examination of Waymire, Dr. Hampton opined she believed Waymire could understand, carry out, and remember simple and complex instructions and would not have problems interacting appropriately with co-workers, supervisors, and the public. (*Id.* at 976-977*).  At the time of Dr. Hampton's examination, Waymire was not on medication or in therapy for depression or anxiety and did not endorse enough symptoms for clinical disorders of either diagnosis.  *Id.*  The ALJ did not find Dr. Hampton's opinion persuasive as it did not describe Waymire's symptoms of

borderline personality disorder and was inconsistent with other evidence in the record documenting Waymire's treatment for depressive disorder. (Tr. at 406). While Waymire does not specifically argue against Dr. Hampton's opinion, she suggests that because the ALJ did not find it persuasive -- and Dr. Ravello reviewed the findings of Dr. Hampton-- Dr. Ravello's opinion cannot be a basis for determining disability cessation. (Doc. 11 at 13). Again, the ALJ found Dr. Ravello's opinion only partially persuasive and articulated she relied only on his opinion to the extent it was consistent with the evidence in the record. (Tr. at 406). As such, Waymire's argument related to the opinion of Dr. Hampton fails.

Additionally, Waymire argues the opinion of John Goff, Ph.D., who performed a consultative examination, provides substantial evidence to support Waymire's contention she remains disabled. (Tr. at 15, 406-407, 1120-1126). Following a September 2018 exam of Waymire, Dr. Goff offered Waymire was mildly limited in her ability to understand, remember, and carry out simple instructions; moderately limited in her ability to understand, remember, and carry out complex instructions; and markedly limited in her ability to make judgments on complex work-related decisions. (Tr. at 1120-1126). He concluded Waymire was functioning at the borderline range of psychometric intelligence, has a long history of volatile and difficult interpersonal relationships, projects a good deal, and is estranged from all important individuals in her life. (Tr. at 1126). Dr. Goff

ultimately diagnosed Waymire with personality disorder not otherwise specified ("NOS"), with borderline and paranoid features. (Tr. at 1126). However, Dr. Goff noted that Waymire gave a variable effort and was much more interested in "telling her story and complaining about mistreatment than performing the tests required." (Tr. at 1124). As such, Dr. Goff opined his findings were an underestimate of her actual capacities and noted her principal difficulties did not seem to be cognitive. *Id.* The ALJ did not find Dr. Goff's opinion persuasive as it was not consistent with Waymire's treatment records, which show she presented as fully oriented with normal mood and affect. (Tr. at 406-407). Once more, the ALJ reviewed the opinion offered by Dr. Goff in light of the record as a whole and articulated reasons why his opinion was not persuasive. *Id.* Therefore, Waymire's argument that Dr. Goff's opinion alone is substantial evidence her disability had not ceased by May 10, 2017, fails.

Finally, Waymire asserts the opinion of Dr. Goff, the records from Choices of Alabama, and the records of St. Vincent's East together are substantial evidence she is still disabled and incorrectly states the "onus now rests with the Administration to present evidence her condition has improved to the point where she can maintain steady, gainful employment." (Doc. 11 at 16). Waymire cites to a Third Circuit case in support of this contention; however, the cited case provides the court's inquiry is limited to "whether there is substantial evidence to support the ALJ's

14

finding." *Daring v. Heckler*, 727 F.2d 64, 68-69 (3rd Cir.1984).    Substantial evidence is "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239.   Having reviewed the entire record, the court is satisfied there is substantial evidence to support the Commissioner's decision that Waymire was no longer disabled as of May 10, 2017.

In sum, while Waymire's records may provide evidence of symptoms present at the time of her January 25, 2012 disability determination, substantial evidence supports medical improvement as defined in 20 C.F.R. § 404.1594(b).   Accordingly, there is no basis to reverse the ALJ's decision.

## B.  Request for Review

Waymire also argues the Appeals Council erred by denying review of the ALJ's decision.   (Doc. 11 at 5-6).   Generally, a claimant may present new evidence at each stage of the administrative process.   *Ingram*, 496 F.3d at 1261 (citing 20 C.F.R. § 404.900(b).   The Appeals Council "must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'"   *Ingram*, 496 F.3d at 1261 (quoting 20 C.F.R. § 404.970(b)). New evidence is material if "'there is a reasonable probability that the new evidence would change the administrative outcome.'"   *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 734, 745 (11th Cir. 2011) (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th

Cir. 1987)). New evidence is chronologically relevant if it "relates to the period on or before the date of the ALJ's decision." 20 C.F.R. § 404.970(b).

If the Appeals Council refuses to consider new evidence that is material and chronologically relevant, its decision is subject to judicial review because it is an error of law. *Barclay v. Comm'r of Soc. Sec.*, 274 F. App'x 738, 743 (11th Cir. 2008) (citing *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). "The [Appeals Council] may deny review if, even in light of the new evidence, it finds no error in the opinion of the ALJ." *Pritchett v. Comm'r, Soc. Sec. Admin.*, 315 F. App'x 806, 814 (11th Cir. 2009) (citing *Ingram*, 496 F.3d at 1262). "[The Appeals Council's] decision to deny review in light of new evidence is subject to judicial review." *Pritchett*, 315 F. App'x at 814 (citing *Falge* 150 F.3d at 1324). In undertaking this review, a court " 'look[s] at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the [Appeals Council] must consider in making its decision whether to review an ALJ's decision.'" *Pritchett*, 315 F. App'x at 814 (quoting *Falge*, 150 F.3d at 1324). If so, "'a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.'" *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 367 (11th Cir. 2010) (quoting *Ingram*, 496 F.3d at 1262).

At issue are approximately 400 pages of medical records submitted by Waymire related to her treatment at St. Vincent's East ("St. Vincent's") in August

2019 and at Eastside Mental Health Center in September 2019.  (Tr. at 8-395).  The Appeals Council must consider new, noncumulative material evidence submitted after the ALJ's decision only where it relates to the period on or before the date of the ALJ's hearing decision.  20 C.F.R. § 404.970(b).  Here, the Appeals Council determined these records did not affect any decision about whether Waymire's disability ended on May 10, 2017, or whether Waymire became disabled since the May 2017 cessation date through the July 2019 decision date.[5]  (Tr. at 2).   In short, the Appeals Council declined to consider these new medical records because they were not chronologically relevant.

Waymire cites to *Ward v. Commissioner of Social Security* to assert "evidence may be chronologically relevant even if it post-dates the ALJ's decision."  2019 WL 5168659, at *8 (M.D. Fla. Oct. 15, 2019).  Notably, in *Ward* the court pointed to *Washington v. Commissioner of Social Security Administration* to support medical evidence post-dating the ALJ's decision can be chronologically relevant but distinguished the *Ward* claimant from the *Washington* claimant.  *Ward,* 2019 WL 5168659 at *8; *Washington,* 806 F.3d 1317, 1322 (11th Cir. 2015).  Upon review, the court found the circumstances in *Ward* were "significantly different" from those

---

[5] The Appeals Council provided should Waymire want them to consider whether she was disabled after July 30, 2019, she will have to apply again.  (Tr. at 2).

present in *Washington* and, therefore, found the AC did not err in denying review of the ALJ's decision.  *Ward*, 2019 WL 5168659 at *8-10.

Specifically, in *Washington,* the court found newly submitted records from the claimant's psychologist were chronologically relevant because: (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental health treatment records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision. *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309–10 (11th Cir. 2018) (citing *Washington*, 806 F.3d at 1319, 1322-1333).  In contrast, the *Ward* court found records of a licensed clinical social worker who evaluated the claimant four months after the ALJ's decision were not chronologically relevant because the newly submitted records did not reflect whether the social worker reviewed the claimant's previous mental health records before formulating her opinion.  *Ward,* 2019 WL 5168659 at *9.  Notably, the Eleventh Circuit Court of Appeals specified consideration of whether newly submitted evidence is chronologically relevant was limited to the specific circumstances of each claimant's case. *Washington*, 806 F. 3d at 1322-23; *Hargress,* 883 F.3d at 1309.  Accordingly, this court limits its analysis to the specific circumstances of this case.

Here*,* the medical opinions included in the additional records submitted by Waymire do not fully consider her past medical records or clearly relate to her

18

claimed limitations in the relevant period.  The St. Vincent's East records reflect Waymire was admitted on August 15, 2019, with a chief complaint of nervous breakdown, severe depression, suicidal thoughts, abdominal pain, and vaginal bleeding. (Tr. at 20).  At the time of her 2019 treatment at St. Vincent's East, Waymire's documented active problems were depression, diabetes, and a psychiatric problem, non-specified.   (Tr. at 41).   Waymire reported a history of chronic depression and a suicide attempt,[6] and her historical diagnosis of depression and borderline personality disorder were noted.  (Tr. at 20, 32).  However, there is no evidence St. Vincent's East staff performed a review of Waymire's medical records from the relevant period.  (*Id*; *see generally* Tr. at 20-395).  Further, the *Ward* court noted that medical opinions showing mental decline or the worsening of a condition after the ALJ's decision do not relate to the relevant period and, therefore, are not chronologically relevant.  *See Ward,* 2019 WL 5168659, at *9 (discussing *Hargress* 883 F.3d at 1309-10). Because her previously submitted records show no evidence of suicidal ideation and, in fact, demonstrate Waymire denied suicidal ideation, her suicidal ideation noted in the St. Vincent's records shows a mental decline and a worsening of her condition (*See e.g.* Tr. at 405, 975, 1006, 1124).  Accordingly, because the St. Vincent's records do not show a full review of Waymire's records

---

[6] Waymire reported she previously attempted suicide but was unsuccessful and never told anyone. (Tr. at 20).

from the relevant period was performed and Waymire's reported symptoms show a worsening of her condition, the additionally submitted St. Vincent's records are not chronologically relevant to the ALJ's decision regarding disability cessation.

Similarly, the sole record submitted from Eastside Health Center is a crisis intervention note which includes no consideration of any of Waymire's medical records from the relevant period.  (Tr. at 11-12).  Therefore, due to the specific circumstances in this case, the Appeals Council did not err in determining the additional records submitted by Waymire were not chronologically relevant.

Finally, the Appeals Council is required to consider new evidence, but it is not required to explain its decision when denying review. *Ward*, 2019 WL 5168659, at *8 (citing 20 C.F.R. §§ 416.1467, 416.1470); *see also Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("because a reviewing court must evaluate the claimant's evidence anew, the AC is not required to provide a thorough explanation when denying review").  Here, the Appeals Council notes it considered the new evidence and found the additionally submitted evidence does not show a reasonable probability it would change the outcome of the decision. (Tr. at 2).

## V.  CONCLUSION

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's

decision is supported by substantial evidence and in accordance with applicable law.

Therefore, that decision is due to be **AFFIRMED**.  A separate order will be entered.

    **DONE** this 29th day of July, 2021.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE